John S. Williamson, Bar No. 106485
jwilliamson@williamsonlawgroup.net
Connie L. Benson, Bar No. 185680
cbenson@williamsonlawgroup.net
WILLIAMSON LAW GROUP
1851 East First St., Suite 1225
Santa Ana, CA 92705
(657) 229-7400/FAX: (657) 229-7444

Attorneys for Defendants, STEVEN KILTY; FBN TRANSPORTATION, LLC; AMSTON SUPPLY, INC.; MARDAN TRANSPORTATION, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET KEIPER, et al., Plaintiffs, vs. VICTOR VALLEY TRANSIT AUTHORITY, etc; et al., Defendants. AND ALL RELATED ACTIONS | CASE NO. EDCV 15-00703-BRO(SPx) EDCV 15-00762-BRO(SPx) EDCV 15-01481-BRO(SPx) EDCV 15-02380-BRO(SPx) OPPOSITION OF TRUCKING PLAINTIFFS TO UNITED STATES OF AMERICA'S MOTION TO DISMISS THIRD PARTY COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN S. WILLIAMSON; DECLARATION OF DAVID ROYER; DECLARATION OF KEITH ZINKOWICH; DECLARATION OF STEVEN KILTY DATE: JANUARY 4, 2016 TIME: 1:30 P.M. COURTROOM: 14, 312 N. Spring St. Los Angeles, CA 90012 HON. BEVERLY REID-O'CONNELL |

# MEMORANDUM OF POINTS AND AUTHORITIES
# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 2

II. NATURE OF RELIEF SOUGHT ......................................................................... 2

III. FACTS IN BRIEF ................................................................................................. 2

    A. The Trucking Plaintiffs ................................................................................. 2

    B. Arrival at Fort Irwin ..................................................................................... 2

    C. Kilty's Prior Delivery to Fort Irwin ............................................................. 3

    D. Compliance with Sign Directions ................................................................ 3

IV. THIS COURT HAS JURISDICTION AS THE DISCRETIONARY FUNCTION EXCEPTION IS INAPPLICABLE ............................................... 4

    A. Leaving an Uncovered Temporary Traffic Control Sign in Plain View When Not in Use, is Not an Act Subject to Discretion ................... 4

    B. Failing to Post Operational Hours is Not an Act Subject to Discretion .................................................................................................... 6

    C. Failing to Display the "OPEN/CLOSED" Status of the Check-in Point is Not an Act Subject to Discretion ....................................................... 7

    D. The Restriction of All Bus Traffic to an Exclusive Lane of Traffic Required the United States to Use Specific Traffic Control Signs and Pavement Markings ............................................................................. 8

    E. Design vs. Implementation ........................................................................... 8

V. JURISDICTIONAL DISCOVERY ....................................................................... 9

VI. IDENTITY OF THE UNITED STATES IN TRUCKING PLAINTIFFS' COMPLAINT ......................................................................................................... 9

IV. CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*American West Airlines, Inc. v. GPA Group, Ltd.*, 877 F2d 793, 801
  (9th Cir. 1989)..............................................................................................9

*Berkovitz v. United States*, 486 U.S. 531 (1988).............................................4

*Continental Cablevision v. United States Postal Serv.*, 945 F.2d 1434
  (8th Cir.1991) ..............................................................................................10

*GATX/Airlog Co. v. United States*, 286 F.3d 1186, 1174 (9th Cir. 2002)......8

*Kennedy v. United States Postal Service*, 145 F3d 1077, 1078 (9th Cir. 1998)........9

*Kielwien v. United States*, 540 F.2d 676, 681 (4th Cir. 1976), cert denied,
  429 U.S. 979 (1976) .....................................................................................4

*O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002)......................4

*Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).........................4

*United States v. Gaubert*, 499 U.S. 315 (1991) ..............................................4

*Whisnant v. United States.* 400 F.3d 1177, 1181 (9th Cir. 2005)....................8

**Statutes**

23 CFR 655........................................................................................................5

49 CFR 1.48(b)(8) .............................................................................................5

49 CFR 1.48(b)(33) ...........................................................................................5

49 CFR 148(c)(2)...............................................................................................5

FRCP Section 12(b)(1)......................................................................................2

23 U.S.C., Sections 109(d), 114(a), 217, 315, and 402(a)...............................5

28 U.S.C. § 2680(a)...........................................................................................4

California Vehicle Code Section 21400..........................................................5

**Citations**

MUTCD Sections 2G.01 (01) – (07)............................................................6, 8

MUTCD Section 2G.03 (01) ...................................................................................7
MUTCD Section 2G.03 – 2G.07 ............................................................................7
MUTCD Sections 2G.03 (23) – (24) .......................................................................7
MUTCD Section 2G.06 (02) ...................................................................................6
MUTCD section 2G.06 (07) ....................................................................................6
MUTCD Section 6B.01 (09) ....................................................................................5

## I. INTRODUCTION

Third Party Plaintiffs, FBN Transportation, LLC, and its driver, Steve Kilty, respectfully submit the following Opposition to the Motion of the Third Party Defendant, United States of America (herein referred to as "United States"), to Dismiss for Lack of Jurisdiction under *FRCP* Section 12(b)(1). As will be shown, the United States adopted specific, mandatory, traffic control MUTCD Standards which were not followed and which caused or contributed to the accident giving rise to the underlying consolidated lawsuits.

## II. NATURE OF RELIEF SOUGHT

FBN Transportation, LLC and Steven Kilty (hereinafter referred to individually as "FBN" and "Kilty", or together as the "Trucking Plaintiffs"), do not seek affirmative relief in their Third Party Complaint. Rather, the Trucking Plaintiffs seek contribution from the United States on the claims for damages brought against them by bus occupants involved in the subject traffic accident, occurring on Fort Irwin premises on June 2, 2014.

## III. FACTS IN BRIEF

### A. The Trucking Plaintiffs

FBN is a motor carrier based in Athens, Wisconsin, licensed by the U.S. Department of Transportation to transport freight (Zinkowich decl. P2). Kilty is a truck driver licensed to operate commercial vehicles (Kilty decl. P1). Kilty was dispatched by FBN to pick up and deliver a piece of equipment known as a "wrecker" from Oshkosh, Wisconsin to the Fort Irwin NTC at the request of the United States. Kilty transported the wrecker on a trailer towed by a motor unit typically referred to as a tractor (Zinkowich decl. P4).

### B. Arrival at Fort Irwin

Kilty drove from Wisconsin through Barstow, California. He continued on Fort Irwin Road and arrived at the Fort Irwin NTC during the night time hours on June 1, 2014.

1  He was directed from Fort Irwin Road to the Fort Irwin By-Pass Road by a fixed
2  roadway sign stating all trucks were to exit and continue on the Fort Irwin Bypass Road
3  (Kilty decl. P4). Over the course of the next three miles Kilty observed roadway signs
4  on his right side. The first sign read "Prepare to Stop". The next sign read "Check-in
5  Point". Neither sign displayed limited hours of operation (Id. P5).

6  A third sign, which read "Trucks Stop Here", was located at the Check-in Point.
7  The signage was affixed to a jersey-type barrier, faced the By-Pass Road, and was
8  clearly visible from the roadway. Base entrance check-in hours of 6:00 a.m. to 8:00
9  a.m. were also posted on the sign (Id. P6).

### C. Kilty's Prior Delivery to Fort Irwin

11  Kilty had made a prior delivery to Fort Irwin NTC, several months earlier. On
12  that occasion, he arrived during the morning hours and observed dozens of cargo trucks
13  stopped and waiting in front of him in the right hand lane of the Bypass Road. Upon
14  his arrival, he observed the trucks in a line, moving up, one by one, going through check-
15  in procedures at the Check-in Point while remaining in the right hand lane. He was
16  advised at that time that entry into the base was permitted only between the hours of
17  6:00 a.m. and 8:00 a.m. and that trucks waited in the number two lane and continued
18  toward the main gate only after receiving clearance to proceed by Military personnel at
19  the Check-in Point (Id. P8).

### D. Compliance with Sign Directions

21  Kilty followed the sign's mandate to stop at the Check-in Point. He stopped his
22  tractor-trailer in the right lane where he and other truck drivers had stopped while being
23  "checked-in" on his prior delivery. Kilty retired to his sleeper birth in the tractor to
24  sleep while awaiting check-in procedures to begin at 6:00 a.m. He was awakened when
25  his vehicle was rear-ended by the VVTA bus before 5:30 a.m. (Id. P7-8).

26  Following the accident, Kilty was interviewed by a Fort Irwin Policeman. He
27  was assured that he had followed base check-in procedures appropriately and had done
28  nothing wrong (Id. P9).

3

## IV. THIS COURT HAS JURISDICTION AS THE DISCRETIONARY FUNCTION EXCEPTION IS INAPPLICABLE

The Discretionary Function Exception to the FTCA provides sovereign immunity for the United States against "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a)

The Government "bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity" because such an exception "is analogous to an affirmative defense" to correctly place the burden on "the party which benefits from the defense." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992). "The FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002) (citing *Kielwien v. United States*, 540 F.2d 676, 681 (4th Cir. 1976), cert denied, 429 U.S. 979 (1976).

Two Supreme Court cases control the application of this exception to the FTCA. See *Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991). The so-called Berkovitz-Gaubert test holds that the DFE applies "only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis."

### A. Leaving an Uncovered Temporary Traffic Control Sign In Plain View When Not in Use, is Not an Act Subject to Discretion

The discretionary element is not met where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954 (internal quotation marks and citation omitted). In such event, our inquiry is at an end, and the discretionary function exception does not apply

4

because "the employee has no rightful option but to adhere to the directive." *Id.*

The Declaration of Michael V. Butolph that accompanies the United States' moving papers identifies regulations promulgated by the Department of Defense, the U.S. Army, and Fort Irwin NTC that govern base traffic operations. The three sources of authority identified by Mr. Butolph each mandate traffic control compliance with safety standards issued or endorsed by the Federal Highway Administration ("FHWA") in the Manual on Uniform Traffic Control Devices ("MUTCD") *(See DOD Instruction 6055.04, Requirement 2(b), motion Exhibit "A"); Army Regulation 190-5, Responsibility (h)(3), motion Exhibit "B"; and, NTC Regulation 190-5, Chapter 2-1 Traffic Control Devices, motion Exhibit "C").*

The MUTCD is approved by the Federal Highway Administration as the National Standard in accordance with Title 23 U.S. Code, Sections 109(d), 114(a), 217, 315, and 402(a), 23 CFR 655, and 49 CFR 1.48(b)(8), 1.48(b)(33), and 148(c)(2). The MUTCD has been adopted by California in accordance with Section 21400 of the California Vehicle Code.

The MUTCD prescribes a specific mandatory Standard for the disposition of Temporary Traffic Control ("TTC") signage during periods when the TTC measures are not in effect. Section 6B.01 (09) states:

> "All TTC devices shall be removed as soon as practicable when they are no longer needed. **When work is suspended for a short period of time**, TTD devices that are no longer appropriate **shall be removed or covered**." (Emphasis added)

The check-in point on the Fort Irwin Road was "temporary" as it was allegedly in operation temporarily, for only two hours each weekday (See Motion, page 5, lines 1-4). The check-in point utilized a "temporary" barricade, to which the "Trucks Stop Here" was affixed (See Motion, page 5, lines 6-8). Each morning, a temporary check point was set up for use only during peak hours (Declaration of Butolph, page 7, lines

5

25-28).

According to Mr. Butolph, the United States' requirement for trucks to stop at the Check-in Point existed temporarily, for two hours only each weekday, between 6:00 a.m. and 8:00 a.m. At all other times, the stopping requirement was not in effect (Butolph declaration, page 9, lines 21-27).

Each morning at 8:00 a.m., the Check-in Point was closed and vacated of personnel. The "Trucks Stop Here" sign was left uncovered, on the side of the road, prominently displayed, facing traffic, in plain view of the motoring public. This can be seen in the photograph marked as Exhibit "K" to the Motion to Dismiss.

The MUTCD requirement that the TTC sign be removed when not in use was not met. The requirement that this TTC sign be covered when not in use was not met. The act of removing and/or covering this sign is not subject to discretion. The MUTCD Standard states removal or covering of signage "shall" occur when not in use. Removal or covering is a mandatory requirement designed to prevent the type of tragic accident that occurred here.

### B. Failing to Post Operational Hours on an Advance Warning Sign is Not an Act Subject to Discretion

Preferential and managed traffic lanes are those put to specialized treatment for non-standard uses. Preferential and managed lanes can be operated on a 24 hour basis, or during peak traffic hours only, such as employed by the United States at the temporary Check-in Point (See MUTCD Section 2G.01 (01) – (07)).

Where a general purpose lane becomes a preferential lane, a "Preferential Lane Advance sign <u>shall</u> be used for advance notification" (MUTCD Section 2G.06 (02)). The MUTCD requires the advance notification sign to include the specific hours and days of operation for preferential lanes that operate on a part-time basis. MUTCD section 2G.06 (07) makes the inclusion of the specific hours and days mandatory by stating this information "shall" be required on a plaque affixed below the sign. This Standard was not met (see Declaration of Kilty Par. 5).

6

This specific mandatory requirement could have easily been fulfilled had the required plaque been affixed below the "Prepare to Stop" sign located in advance of the Check-in Point, with the specific hours and days when a driver should be prepared to stop.

**C. Failing to Display the "OPEN/ CLOSED" Status of the Check-in Point is Not an Act Subject to Discretion**

The management of truck traffic to include stopping in a preferential lane during certain hours of certain days requires the use of a "changeable message sign" stating whether the Check-in Point is open or closed:

> "The provisions of [MUTCD] Sections 2G.03 through 2G.07 regarding regulatory signs for Preferential lanes shall apply to managed lanes operated at all times or at certain times … by using vehicle type restrictions as a <u>congestion management strategy</u>. Such managed lanes shall use changeable message signs or changeable message elements within static signs to display the appropriate regulatory sign messages only when they are in effect.
>
> "When certain types of vehicles (such as trucks) are prohibited from using a managed lane or when a managed lane is restricted to use by only certain types of vehicles during certain operational strategies, regulatory signs or regulatory panels within the appropriate guide signs <u>that include changeable message elements shall be used to display the open/closed status of the managed lane</u> for such vehicle types" (MUTCD Section 2G.03 (23) and (24), emphasis added).

Use of a changeable message sign displaying the "open/closed status" of the

7

Check-in Point is made mandatory by the MUTCD. Signage identifying the Check-in Point did not comply (see Exhibit "J" Motion to Dismiss). The "Check-in Point" message display of "CLOSED" or "OPEN", was clearly designed to avoid driver confusion where preferential lane management is in effect.

### D. The Restriction of All Bus Traffic to an Exclusive Lane of Traffic Required the United States to Use Specific Traffic Control Signs and Pavement Markings

The restriction of bus traffic to the left lane of the bypass road requited the United States to implement appropriate traffic control devices mandated by MUTCD for management of Preferential Lanes of Traffic. Both regulatory signs and pavement markers ("BUS ONLY") "shall be used to advise road users." (See MUTCD Sections 2G.01(01) and 2G.03 (01).

The required signs were not used. The mandatory pavement markings were not used. Instead the United States chose to notify users of the lane restriction by personal communication to unidentified "companies", and later, directly to VVTA (Decl. Butolph P8C).

### E. Design Decisions vs. Implementation Requirements

"[T]he design of a course of governmental action is shielded by the discretionary function exception, whereas the implementation of that course of action is not." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005).

"Whether a challenged action falls within the discretionary function exception requires a particularized analysis if the specific agency action challenged" (*GATX/Airlog Co. v. United States*, 286 F.3d 1186, 1174 (9th Cir. 2002)). To identify the particular agency conduct with which Plaintiffs take issue, the allegations of Plaintiff's Complaint must be examined (*Whisnant v. United States*, supra, at 1184-85).

The charging allegations in the Complaint of the Trucking Plaintiffs are identified in Paragraph 29, subsections (a)-(l). The selection of the type of traffic control plan to fit security needs at Fort Irwin NTC is within the discretion of the United States. The

8

1 | failure to follow self-imposed, prescribed and mandatory MUTCD Standards in the
2 | implementation of the plan is not subject to policy considerations.

## V. JURISDICTIONAL DISCOVERY

The Trucking Plaintiffs have had no opportunity to seek discovery from the United States. Pre-litigation FOIA requests placed upon the United States have been ignored. Despite the passage of more than 18 months since the subject accident, the United States has not released either the Criminal or Traffic Collision Investigation Reports. Video taken from the subject bus, Electronic Control Unit ("black box") Data from the bus, or for that matter, a definitive list of bus occupants has not been released. At no time prior to its filing of the motion at bar has the United States identified and described the nature or details of its traffic control plan at Fort Irwin. (See Declaration of John Williamson)

"[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *American West Airlines, Inc. v. GPA Group, Ltd.*, 877 F2d 793, 801 (9th Cir. 1989). Given the inability of the Trucking Plaintiffs to obtain information relative to the Fort Irwin traffic plan, independent of that presented in this motion, these parties seek leave to conduct discovery should the Court be inclined to otherwise grant the motion.

## VI. IDENTITY OF THE UNITED STATES IN TRUCKING PLAINTIFFS' COMPLAINT

Moving party, in footnote 3 on page 7 of its moving papers, claims the "United States" to be the only appropriate party under the FTCA and seeks dismissal of the Complaint because the Trucking Plaintiffs have named the "United States Department of the Army Fort Irwin Training Center". Moving party cites only *Kennedy v United States Postal Service,* 145 F3d 1077, 1078 (9th Cir. 1998) in Support of this claim.

The Kennedy court affirmed dismissal of a postal worker's "employment-related tort claims" brought under the FTCA, because "Federal employees alleging employment-related tort claims subject to the Civil Service Reform Act may not bring

9

an action under the FTCA" *(Id. at 1078)*. As such, Plaintiff's request for leave to amend was denied as being futile. The Court cited *Continental Cablevision v. United States Postal Serv.,* 945 F.2d 1434 (8th Cir.1991) to support that the United States Postal Service is a legal entity separate and apart from the United States *(Id. at 1440).*

The United States in this case has made no showing that the United States Department of the Army Fort Irwin Training Center is a distinct entity, separate from the United States. Nor has The United States demonstrated an amendment would be futile due to the inapplicability of an independent statutory prohibition against the pursuit of claims herein by Trucking Plaintiffs. If however the Court is inclined to dismiss based on the manner in which Trucking Plaintiffs have identified the United States, leave to amend is respectfully requested.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Motion of the United States to dismiss under FRCP 12(b)(1) be denied.

DATED: December 14, 2015      WILLIAMSON LAW GROUP

*/s/ John S. Williamson*
John S. Williamson
*jwilliamson@williamsonlawgroup.net*
Attorneys for Defendants, STEVEN KILTY; FBN TRANSPORTATION, LLC; AMSTON SUPPLY, INC.; MARDAN TRANSPORTATION, LLC

10

# CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2015, I electronically transmitted the following document(s) to the Clerk's Office using the CM-ECF System for filing and transmittal of Notice of Electronic filing to the following CM-ECF registrants:

**DOCUMENT(S) SERVED:**
OPPOSITION OF TRUCKING PLAINTIFFS TO UNITED STATES OF AMERICA'S MOTION TO DISMISS THIRD PARTY COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN S. WILLIAMSON; DECLARATION OF DAVID ROYER; DECLARATION OF KEITH ZINKOWICH; DECLARATION OF STEVEN KILTY

**PARTIES SERVED:**
Martin D. Gross
Martin@lawgross.com
LAW OFFICES OF MARTIN D. GROSS
2001 Wilshire Blvd., Suite 205
Santa Monica, CA 90403
(310) 453-8320/FAX: (310) 861-1359
**ATTORNEYS FOR PLAINTIFFS, MARGARET KIEPER AND DAIL KIEPER, JR., INDIVIDUALLY AND AS THE SUCCESSORS-IN-INTEREST TO DAIL KEIPER, SR., DECEASED**

Douglas F. Welebir
dfw@wtw-law.com
WELEBIR TIERNEY & WECK
2068 Orange Tree Lane, Suite 215
Redlands, CA 92374
(909) 335-0444/FAX: (909) 335-0452
**ATTORNEYS FOR PLAINTIFFS, MICHAEL CHESTNUT, MISIONA TUSIESEINA, PEDRO MIRANDA**

Kevin L. Elder
kelder@penneyandassociates.com
PENNEY & ASSOCIATES
6536 Lonetree Blvd.
Rocklin, CA 95765
(916) 786-7662 / (916) 786-0144

| | |
|---|---|
| 1 | **ATTORNEYS FOR PLAINTIFFS, JESUS AGUILAR, NAIOMI BRIDGETTE, JERMAINE RATLIFF, a minor, by and through his Guardian ad Litem, NAIOMI BRIDGETTE** |
| 2 | |
| 3 | |
| 4 | James R. Tedford II, Esq. |
| | ted@tedfordlaw.com |
| 5 | TEDFORD & ASSOCIATES |
| 6 | 301 E. Colorado Blvd., Suite 514 |
| | Pasadena, CA 91101 |
| 7 | (626) 793-8607/FAX: (626) 793-7293 |
| 8 | **ATTORNEYS FOR PLAINTIFF, DINORAH AGUILAR** |
| 9 | Adrianos Facchetti, Esq. |
| 10 | adrianos@facchettilaw.com |
| | reagan.facchettilaw@gmail.com |
| 11 | LAW OFFICES OF ADRIANOS FACCHETTI, PC |
| 12 | 301 E. Colorado Blvd, Suite 514 |
| | Pasadena, CA 91101 |
| 13 | (626) 793-8607/FAX:  (626) 793-7293 |
| 14 | **ATTORNEYS FOR PLAINTIFF, DINORAH AGUILAR** |
| 15 | |
| | Marisa Rodriguez-Shapoval |
| 16 | mrodriguez-shapoval@wwhgd.com |
| 17 | Jeremy R. Alberts, Esq. |
| | jalberts@wwhgd.com |
| 18 | WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC |
| 19 | 6385 S. Rainbow Blvd., Suite 400 |
| | Las Vegas, NV  89118 |
| 20 | (702) 938-3838/FAX: (702) 938-3864 |
| 21 | **ATTORNEYS FOR DEFENDANTS, VICTOR VALLEY TRANSIT AUTHORITY, TRANSDEV SERVICES, INC., VEOLIA TRANSPORTATION SERVICES, INC., DINORAH AGUILAR** |
| 22 | |
| 23 | |
| 24 | Andrea Alexander, Esq. |
| | ana@alexanderlawpc.com |
| 25 | ALEXANDER LAW GROUP, PC |
| 26 | 10960 Ventura Blvd., Second Floor |
| | Studio City, CA 91604 |
| 27 | (818) 237-3179 |
| 28 | **OF COUNSEL WITH WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC, ATTORNEYS FOR DEFENDANTS, VICTOR VALLEY TRANSIT** |

AUTHORITY, TRANSDEV SERVICES, INC., VEOLIA TRANSPORTATION SERVICES, INC., DINORAH AGUILAR

Loretta E. Lynch
Attorney General of the United States
Laura E. Duffy
United States Attorney
Katherine L. Parker
katherine.parker@usdoj.gov
Glen F. Dorgan
glen.dorgan@usdoj.gov
Valerie E. Torres
valerie.torres@usdoj.gov
Special Attorneys to the Attorney General
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, Ca  92101
(619) 546-7665 / (619) 546-7751
**ATTORNEYS FOR THIRD-PARTY DEFENDANT UNITED STATES OF AMERICA**

/s/ Brenda Rowland
BRENDA ROWLAND