UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Cheryl Wynn | Not Present | N/A |
| Relief Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiffs:         Attorneys Present for Defendants:

Not Present                              Not Present

**Proceedings:**      (IN CHAMBERS)

**ORDER DENYING THIRD PARTY DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [136, 137]**

## I.     INTRODUCTION

Pending before the Court are two Motions to Dismiss filed by Third Party Defendant United States of America (the "United States") pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. Nos. 136, 137.) Namely, the United States seeks to dismiss Third Party Complaints filed by Defendants/Third Party Plaintiffs Victor Valley Transit Authority ("VVTA"), Dinorah Aguilar, Transdev Services, Veolia Transportation Services (collectively, the "Bus Defendants"), (Dkt. No. 73), and Defendants/Third Party Plaintiffs Steven Kilty, FBN Transportation, LLC, Mardan Transportation, and Amston Supply, Inc. (collectively, the "Truck Defendants"), (Dkt. No. 49). The Bus and Truck Defendants seek indemnification from the United States for its alleged negligence in causing a motor vehicle collision that occurred on or near Fort Irwin in San Bernadino, California on June 2, 2015. (*See* Dkt. Nos. 49, 73.) For the following reasons, the Court **DENIES** the Unites States' Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

The facts giving rise to this action stem from an automobile accident that occurred at approximately 5:30 a.m. on June 2, 2014. (Compl. ¶¶ 1–2.) Specifically, a transit bus driven by Third Party Plaintiff Denorah Aguilar collided with a tractor-trailer, operated

Case 5:15-cv-00703-BRO-SP Document 155 Filed 02/01/16 Page 2 of 20 Page ID #:2008

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

by Third Party Plaintiff Steven Kilty, which was stopped on a northbound bypass road in or around the Fort Irwin Army base in San Bernadino, California. (*Id.*; First Am. Third Party Compl. ("Bus Defs.' TPC") ¶ 3; Third Party Compl. ("Truck Defs.' TPC") ¶ 18.) A majority of the plaintiffs involved in this matter were bus passengers who were injured in the accident, (*see* Compl. ¶ 2; *see also Jesus Aguilar, et al. v. Victor Valley Transit Authority, et al.*, No. CV 15-01481-BRO (SPx), Dkt. No. 16; *Michael Chestnut, et al. v. Victor Valley Transit Authority, et al.*, No. CV 15-00762-BRO (SPx), Dkt. No. 38), while the plaintiffs in the lead case are the surviving wife and son of a bus passenger who died as a result of the injuries he sustained in the accident, (Compl. ¶ 3).

### 1. Facts Relating to the Truck Defendants' Indemnity Claim Against the United States

According to the Truck Defendants, Steven Kilty ("Mr. Kilty") was operating a tractor-trailer in the nighttime hours of June 1, 2014 and driving northbound toward Fort Irwin, intending to make a delivery at the Fort Irwin base. (Truck Defs.' Opp'n at 2; Decl. of Steven Kilty ("Kilty Decl.") ¶ 2.) En route to the base, signs on the highway directed truck and bus traffic to the Fort Irwin Bypass Road. (Kilty Decl. ¶ 4.) As Mr. Kilty proceeded along the bypass road, additional road signs warned Mr. Kilty to prepare to stop. (Kilty Decl. ¶ 5.) Shortly thereafter, Mr. Kilty arrived at a location designated by road signs as a "check-in point." (*Id.*) According to Mr. Kilty, there were no signs indicating the operating hours of the checkpoint. (*Id.*)

Mr. Kilty also claims there was a sign that read "TRUCKS STOP HERE" at the checkpoint, which, in conjunction with additional signage stating that check-in was from 6:00 a.m. through 8:00 a.m., led Mr. Kilty to believe he was required to wait at the checkpoint until 6:00 a.m. for clearance to enter the base. (Kilty Decl. ¶ 6.) Mr. Kilty contends that he had engaged in similar conduct several months earlier when making deliveries to Fort Irwin. (Kilty Decl. ¶ 8.) Under the assumption that he was required to wait at the checkpoint until 6:00 a.m., Mr. Kilty retired to the sleeper berth of his tractor-trailer until approximately 5:30 a.m. on June 2, 2014, when the bus struck his tractor-trailer from behind. (Kilty Decl. ¶¶ 3, 7.)

Case 5:15-cv-00703-BRO-SP Document 155 Filed 02/01/16 Page 3 of 20 Page ID #:2009

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

### 2. Facts Relating to the Bus Defendants' Indemnity Claim Against the United States

According to the Bus Defendants, Third Party Plaintiff Aguilar was operating a transit bus at approximately 5:10 a.m. on June 2, 2014, travelling northbound on the Fort Irwin bypass road toward the Fort Irwin National Training Center. (Bus Defs.' TPC ¶ 21.) Soon after 5:10 a.m., the transit bus collided with the tractor-trailer, which was parked on the right side of the roadway. (Bus Defs.' TPC ¶¶ 22, 25.) The Bus Defendants allege that the bypass road had (1) no markings indicating that the left side of the lane was designated for buses only, (Bus Defs.' TPC ¶ 30); (2) no road signs indicating that trucks were to stop to the right of the roadway, (Bus Defs.' TPC ¶ 31); and, (3) little or no lighting which would have allowed Third Party Plaintiff Aguilar to see the tractor-trailer in the road, (Bus Defs.' TPC ¶ 32).

### B. Procedural Background

Plaintiffs Margaret Keiper and Dail Keiper, Jr., the wife and son of decedent/passenger Dail Keiper, Sr., (Compl. ¶ 3), initiated this action on March 4, 2014, alleging general negligence and negligence per se causes of action against the Bus and Truck Defendants. (Dkt. No. 1-1.) In two related actions, additional bus passengers filed similar causes of action against the Bus and Truck Defendants, seeking damages for injuries suffered as a result of the accident. (*See Jesus Aguilar, et al. v. Victor Valley Transit Authority, et al.*, No. CV 15-01481-BRO (SPx), Dkt. No. 16; *Michael Chestnut, et al. v. Victor Valley Transit Authority, et al.*, No. CV 15-00762-BRO (SPx), Dkt. No. 38.) Third Party Plaintiff Aguilar, the driver of the transit bus, also filed suit against the Truck Defendants, seeking damages resulting from the Truck Defendants' alleged negligence. (*Dinorah Aguilar v. Steven Kilty et al.*, CV 15-02380-BRO (SPx), Dkt. No. 1-1.) For pretrial purposes, the Court consolidated the cases, designating *Keiper, et al. v. Victor Valley Transit Authority, et al.*, EDCV 15-00703-BRO (SPx) as the lead case and ordering that all pretrial documents be filed in the lead case only. (Dkt. Nos. 103, 106, 138.)

On June 1, 2015, the Bus Defendants filed a Third Party Complaint against the United States, (Dkt. No. 26), which they amended on July 28, 2015, (Dkt. No. 73). The Bus Defendants' First Amended Complaint alleges equitable indemnity, contribution, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

negligence causes of action. (Bus Defs.' TPC ¶¶ 49–62.) Specifically, the Bus Defendants allege that the United States was negligent in the following ways: (1) creating entry procedures which allowed the tractor-trailer to be stopped at the checkpoint without lights or warning devices, (Bus Defs.' TPC ¶ 50); (2) failing to act despite having notice of the tractor-trailer stopped on the right side of the bypass road, (*id.*); and, (3) failing to mark the left side of the lane to indicate that it was designated for buses only, (Bus Defs.' TPC ¶ 29).

On July 6, 2015, the Truck Defendants filed a Third Party Complaint against the United States, also seeking equitable indemnity and contribution. (Dkt. No. 49.) Namely, the Truck Defendants allege that the United States was negligent in the following ways: (1) creating a dangerous condition by requiring trucks to stop and wait at a checkpoint on the Fort Irwin bypass road until receiving permission to continue travelling on the road, (Truck Defs.' TPC ¶ 29a); (2) failing to adequately warn vehicle operators travelling on the bypass road "that trucks were stopped in lanes of traffic, as required," (Truck Defs.' TPC ¶ 29d); (3) failing to provide adequate directions, instructions, and/or warnings on signs at the checkpoint, (Truck Defs.' TPC ¶ 29h); (4) leaving the guard booth at the checkpoint near the "TRUCKS STOP HERE" sign unattended, (Truck Defs.' TPC ¶ 29i); (5) leaving the "TRUCKS STOP HERE" sign standing on the roadway at all times, regardless of whether the stopping requirement was intended to remain in effect indefinitely, (Truck Defs.' TPC ¶ 29j); (6) failing to investigate an anonymous warning that a truck stopped on the bypass road was creating a dangerous condition, (Truck Defs.' TPC ¶ 29k); and, (7) failing to provide a separate area for trucks to park while awaiting permission to enter Fort Irwin, (Truck Defs.' TPC ¶ 29l).

On November 30, 2015, the United States filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) against the Bus Defendants. (Dkt. No. 136.) On December 4, 2015, the United States filed a similar motion against the Truck Defendants. (Dkt. No. 137.) In each motion, the United States argues that although it has waived its sovereign immunity with respect to the Bus and Truck Defendants' Third Party Complaints, the discretionary function exception to the sovereign immunity waiver applies, barring both Third Party Complaints. (Mot. to Dismiss Bus Defs.' Third Party Compl. "MTD Bus Defs.' TPC") at 8–18; Mot. to Dismiss Truck Defs.' Third Party Compl. "MTD Truck Defs.' TPC") at 8–18.) Specifically, the United States claims that

Case 5:15-cv-00703-BRO-SP Document 155 Filed 02/01/16 Page 5 of 20 Page ID #:2011

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

its decisions to create the bypass road and implement base access procedures were rooted in the following policy considerations: traffic safety, preventing terrorist attacks on the base, efficient base entry procedures, and the need to ensure that base employees could reach their work stations in a timely manner each morning and thereby further the base's mission of training ground troops. (MTD Truck Defs.' TPC at 13.)

Both the Bus and Truck Defendants timely opposed. (Dkt. Nos. 141, 142.) In the Bus Defendants' Opposition, they expressly concede that the discretionary function exception applies with respect to the United States' decision to design and build the bypass road. (Bus Defs.' Opp'n at 8.) However, they contend that the United States was negligent because although it stated that "the plan was to . . . direct all bus traffic to the left-hand lane of the bypass road," (Decl. of Michael Butolph ("Butolph Decl.") ¶ 8C), it failed to install a longitudinal "Bus Only" marking along the left lane of the bypass road, as required under the Manual of Uniform Traffic Control Devices ("MUTCD") (CA) section 3B.22.[1] (Bus Defs.' Opp'n at 8–9.)

The Truck Defendants also impliedly concede that the exception applies to the United States' decision to create the bypass road, given that they do not raise that argument in their Opposition. Instead, the Truck Defendants focus on three specific acts of alleged negligence. (Truck Defs.' Opp'n at 4–8.) First, they argue that the United States was negligent in failing to remove or cover the "TRUCKS STOP HERE" sign when the checkpoint was not operational, which, as the Truck Defendants argue, was required under the MUTCD. (Truck Defs.' Opp'n at 5–6.) According to the Truck Defendants, the facts that the sign was left uncovered, on the side of the road, prominently displayed, facing traffic, and in plain view of motorists created confusion as to when trucks were required to stop at the checkpoint. (Truck Defs.' Opp'n at 6.) Second, the Truck Defendants contend that, pursuant to the MUTCD, the "prepare to stop" sign located in advance of the checkpoint should have included the specific hours and days when a driver should be prepared to stop. (Truck Defs.' Opp'n at 6–7.) Finally, they maintain that the United States was negligent in failing to display the "opened" or

---

[1] As discussed below, the Bus and Truck Defendants contend that Fort Irwin employees, under the Army's own policy, were required to follow the MUTCD's guidelines. (*See* MTD Bus Defs.' TPC, Ex. C at 81 ("All traffic control devices and signs will conform to the 'Manual of Uniform Traffic Control Devices for Streets and Highways . . . .'")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

"closed" status of the checkpoint—as allegedly required under the MUTCD—which they argue would have alleviated confusion regarding when trucks were required to stop at the checkpoint. (Truck Defs.' Opp'n at 7–8.)

On January 19, 2016, the United States timely replied to the Bus and Truck Defendants' Oppositions. (Dkt. Nos. 151, 152.) The United States first argues that the MUTCD does not contain legal requirements regarding the installation of traffic control devices, thus although Fort Irwin's policy is to follow the MUTCD's guidelines, that fact does not defeat the application of the discretionary function exception. (Reply to Truck Defs.' Opp'n at 1–4.) It also contends that the cited MUTCD provisions do not apply to the challenged conduct. (Reply to Truck Defs.' Opp'n at 4–10.) On January 25, 2016, the Court held oral argument in this matter. (Dkt. No. 154.)

## III. LEGAL STANDARD

A party may contest subject matter jurisdiction pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the moving party may either attack the pleadings on their face or present extrinsic evidence for the district court's consideration. *Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1172 (C.D. Cal. 2011) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (noting that Rule 12(b)(1) jurisdictional attacks "can be either facial or factual")). A district court must determine whether an attack is facial or factual, as this determination governs the scope of the court's review. *See Kohler*, 818 F. Supp. 2d at 1172.

When deciding a Rule 12(b)(1) motion that attacks the complaint on its face, a court "must accept the allegations of the complaint as true." *Id.* (citing *Valdez v. United States*, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), *aff'd*, 56 F.3d 1177 (9th Cir. 1995)). But in deciding a Rule 12(b)(1) motion that raises a factual attack, courts "may weigh the evidence presented, and determine the facts in order to evaluate whether they have power to hear the case." *Id.* (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)); *see also White*, 227 F.3d at 1242 (when a motion relies on extrinsic evidence, a court "need not presume the truthfulness of the plaintiffs' allegations").

The more expansive standard for factual attacks is inappropriate "where issues of jurisdiction and substance are intertwined." *Roberts*, 812 F.2d at 1177. Thus, "[a] court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Id.* (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)); *see also Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987). In such cases, the court must assume the truth of the complaint's allegations unless they are controverted by undisputed facts. *Kohler*, 818 F. Supp. 2d at 1173; *Roberts*, 812 F.2d at 1177. Additionally, where the question of jurisdiction "is so intertwined with the merits that its resolution depends on the resolution of the merits, 'the trial court should employ the standard applicable to a motion for summary judgment.'" *Careau Grp. v. United Farm Workers of Am., AFL-CIO*, 940 F.2d 1291, 1293 (9th Cir. 1991) (quoting *Augustine*, 704 F.2d at 1077). In such cases, the court must convert the motion into a Rule 12(b)(6) motion to dismiss or a Rule 56 summary judgment motion. *Islands, Inc. v. U.S. Bureau of Reclamation*, 64 F. Supp. 2d 966, 968 (E.D. Cal. 1999), *vacated on other grounds*, 10 F. App'x 491 (9th Cir. 2001).

The party asserting subject matter jurisdiction bears the burden of establishing it. If the moving party presents extrinsic evidence to defeat subject matter jurisdiction, the party asserting jurisdiction must present its own evidence to meet its burden. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Because federal courts are of limited jurisdiction, they possess original jurisdiction only as authorized by the Constitution and federal statute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction must be determined from the face of the complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1346, federal courts possess original jurisdiction over certain tort cases against the United States "for damages for personal injuries in situations where a private person would be liable under the law where the act or omission causing the injuries occurred." *Richardson v. United States*, 943 F.2d 1107, 1110 (9th Cir. 1991).

## IV.    DISCUSSION

The principal issue before the Court centers on the applicability of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, and more specifically, whether the discretionary function exception to the FTCA applies. If the exception applies, the Bus and Truck Defendants' Third Party Complaints against the United States are barred under

Case 5:15-cv-00703-BRO-SP Document 155 Filed 02/01/16 Page 8 of 20 Page ID #:2014

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

the doctrine of sovereign immunity and the Court lacks subject matter jurisdiction. Conversely, if the exception does not apply, the United States' waiver of sovereign immunity under § 1346 controls and the Bus and Truck Defendants' third party claims survive the United States' Rule 12(b)(1) motion.

"A party may bring an action against the United States only to the extent that the government waives its sovereign immunity." *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)). The United States has waived its sovereign immunity in the FTCA. *See* 28 U.S.C. § 1346. Namely, the FTCA represents a limited waiver of sovereign immunity for tort claims seeking damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). "The liability of the United States under the FTCA is subject to the various exceptions contained in § 2680, including the 'discretionary function' exception . . . ." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). This exception provides that the government is not liable for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

When determining whether this exception applies, courts "must engage in a two-step analysis." *Valdez*, 56 F.3d at 1179. First, courts must "ask whether the challenged actions involve 'an element of judgment or choice.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *Id.* at 324.

Case 5:15-cv-00703-BRO-SP Document 155 Filed 02/01/16 Page 9 of 20 Page ID #:2015

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

However, "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *Id.*

Second, "[o]nce the element of choice or judgment has been established, we must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Valdez*, 56 F.3d at 1179 (quoting *Gaubert*, 499 U.S. at 322–23). "[T]he exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Gaubert*, 499 U.S. 323 (quoting *Berkovitz*, 486 U.S. at 537). Thus, "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in" public policy. *Gaubert*, 499 U.S. at 324–25. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325. In other words, "[t]he decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998) (citing *Gaubert*, 499 U.S. at 325).

"While the plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA, 'the United States bears the ultimate burden of proving the applicability of the discretionary function exception.'" *Valdez*, 56 F.3d at 1179 (quoting *Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir. 1992) (internal citation omitted)). Further, "the FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002).

### A. Whether the Challenged Actions Involve an Element of Judgment or Choice

According to the Bus and Truck Defendants, there was no "element of judgment or choice," *Gaubert*, 499 U.S. at 322, here because the United States, through the Army, expressly adopted the MUTCD as the regulation with which all "traffic control devices and signs" controlled by Fort Irwin were required to conform. (*See* MTD Bus Defs.' TPC, Ex. C at 81; *see also* Bus Defs.' Opp'n at 8; Truck Defs.' Opp'n at 5.) Specifically, the Bus Defendants cite the Army's NTC Regulation 190-5, which states that "[a]ll traffic

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

control devices and signs will conform to the [MUTCD]." (MTD Bus Defs.' TPC, Ex. C at 81.) In reply, the United States argues that "the MUTCD is neither mandatory nor applicable by its terms to the Army's conduct here." (Reply to Truck Defs.' Opp'n at 1; Reply to Bus Defs.' Opp'n at 1.)

"An agency does not retain discretion whether to act where a statute or policy directs mandatory and specific action and the agency has no lawful option but to adhere to the directive." *Tobar v. United States*, 731 F.3d 938, 946 (9th Cir. 2013) (internal quotation marks and citation omitted). According to the Bus and Truck Defendants, the fact the Army self-imposes a requirement to follow the MUTCD establishes that there was no element of judgment or choice to follow the MUTCD provisions at issue here. However, even assuming the United States adopted the MUTCD to guide its installation of traffic control devices and signs, the manual itself expressly provides that although it "describes the application of traffic control devices," it "shall not be a legal requirement for their installation." MUTCD § 1A.09, 02. Thus, it cannot be said that the United States had "no lawful option but to adhere" to the manual. *Tobar*, 731 F.3d at 946. Adopting the MUTCD as a guide did not make its provisions legally binding on the Army. Rather, the Army was as free to disregard to the MUTCD's provisions as it was in adopting them to guide the Army's installation of traffic control devices and signs.

Further, in *Cope v. Scott*, the District of Columbia Circuit held that the National Park Service's policy to follow the MUTCD did not abrogate the Park's discretion regarding where and what type of signs to post. 45 F.3d 445, 451 (D.C. Cir. 1995). The court also stated that the MUTCD "is more of a guidebook" than a "specific prescription." *Id.* At oral argument, the Bus Defendants attempted to distinguish *Cope*, arguing that the National Park Service in that case only adopted the MUTCD as a guideline, whereas the Army in the instant case adopted it as mandatory. However, as discussed above, the discretion the Army exercised in adopting the manual is indicative of the discretion it possesses to disregard it. In other words, that the MUTCD is not legally binding on the Army means the Army maintains discretion to deviate from it.

Further, *Cope* is instructive to the extent it notes that the MUTCD itself permits the exercise of discretion. For example, the manual provides that "[t]he decision to use a particular device at a particular location should be made on the basis of either an engineering study or the application of engineering judgment," and that the results from

Case 5:15-cv-00703-BRO-SP   Document 155   Filed 02/01/16   Page 11 of 20   Page ID #:2017

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

the engineering studies should dictate when and where "signs are deemed necessary or desirable." MUTCD § 2A.03, 03. Thus, the fact the manual itself allows for the exercise of discretion rebuts the argument that the Army's mandated reliance on it absolves the Army and its employees of the "element of judgment or choice." *Gaubert*, 499 U.S. at 322.[2]

For the foregoing reasons, the Court concludes that the challenged conduct here— namely, the United States' failure to install longitudinal "Bus Only" markings along the left lane of the bypass road, (Bus Defs.' Opp'n at 8), its failure to cover temporary road signs when not in use, (Truck Defs.' Opp'n at 4–6), its failure to post the checkpoint's operational hours, (Truck Defs.' Opp'n at 6–7), and its failure to post "open" and "closed" signs at the checkpoint, (Truck Defs.' Opp'n at 7–8)—involves the exercise of discretion.

## B. Whether the Challenged Actions Are Susceptible to a Public Policy Analysis

"[E]ven assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (internal quotation marks and citation omitted). Given that "the purpose of the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,'" *Gaubert*, 499 U.S. at 323 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1991)), when properly applied, "the exception 'protects only governmental actions and decisions based

---

[2] At oral argument, the Bus Defendants also argued that, according to the Department of Defense's supplement to the MUTCD, Army employees were not permitted to deviate from the MUTCD's standards absent approval by the Surface Deployment and Distribution Command Transportation Engineering Agency and the Federal Highway Administration. (*See* Dkt. No. 142-5 at 4.) As discussed above, even assuming the Army and its employees required approval to deviate from the MUTCD, that the MUTCD itself allows for discretion establishes that even rigid adherence to it would not eliminate the exercise of discretion. For example, where the MUTCD specifically provides for the exercise of discretion in a given action, the Army or its employees may comply with the MUTCD, and thus the Army's policy to follow it, by exercising discretion in carrying out that act. Thus, it cannot be said that there is no "element of judgment or choice" in conforming to the MUTCD. *Gaubert*, 499 U.S. at 322.

Case 5:15-cv-00703-BRO-SP   Document 155   Filed 02/01/16   Page 12 of 20   Page ID #:2018

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

on considerations of public policy,'" *id.* (quoting *Berkovitz*, 486 U.S. at 537). As discussed above, "[t]he decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Miller*, 163 F.3d at 593 (citing *Gaubert*, 499 U.S. at 325).

"Determining whether a decision is essentially political, social, or economic . . . is admittedly difficult, since nearly every government action is, at least to some extent, subject to 'policy analysis.'" *Cope*, 45 F.3d at 448 (citing *Gaubert*, 499 U.S. at 335 (Scalia, J., concurring) (internal quotation marks and citation omitted)). In deciding whether the exception applies here, the Court is guided by Ninth Circuit precedent.

### 1.  Cases in Which the Discretionary Function Exception Applied

In *Valdez*, the plaintiff was severely injured after falling down a waterfall in Kings Canyon National Park. *Valdez*, 56 F.3d at 1178. The plaintiff argued that the United States was negligent in designing and maintaining a walking trail, installing inadequate warning signs, failing to install guard rails to prevent attempts to cross the stream, and failing to properly warn the public of potential hazards through educational materials, brochures, signs, and pamphlets. *Id.* at 1178. In concluding that the discretionary function exception applied, the Court stated that "the challenged conduct clearly implicates a choice between the competing policy considerations of maximizing access to and preservation of natural resources versus the need to minimize potential safety hazards." *Id.* at 1180. Thus, given that the National Park employees balanced the countervailing interests of safety, access, and preserving natural resources, they engaged in the necessary balancing of policy considerations to warrant the exception's application. *Id.*

In *Childers v. United States*, the parents of an eleven-year-old child who died during a hiking accident in Yellowstone National Park sued the United States, alleging that the National Park Service ("NPS") was required to warn of dangers associated with snow and ice that accumulated along walking trails in the Park. 40 F.3d 973, 973–74 (9th Cir. 1995). In finding that the discretionary function exception applied, the court reasoned that the NPS's decision not to post warning signs was part of an overall plan predicated on multiple public policy considerations. *Id.* at 976. Specifically, the court stated the following:

Case 5:15-cv-00703-BRO-SP   Document 155   Filed 02/01/16   Page 13 of 20   Page ID #:2019

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

Unable to maintain all the trails in the park, cognizant that posting warning signs would inadvertently attract visitors to unmaintained trails, and unable to post signs throughout the park, NPS could only decide to close large portions of the park, or to keep the park open, provide visitors with information on the hazards, and take steps to discourage visitors from going to hazardous areas.

*Id.* Thus, "[p]ark rangers used their discretion to balance, within the constraints of the resources available to them, a statutory mandate to provide access with the goal of public safety," thereby warranting application of the discretionary function exception. *Id.*

In *Blackburn v. United States*, the plaintiff sued the United States, claiming that the National Park Service failed to provide more specific warnings against diving off a bridge in Yosemite National Park, even though there were signs stating "DANGEROUS TO DIVE FROM BRIDGE." 100 F.3d 1426, 1428–29 (9th Cir. 1996). The court held that the "decisions regarding the election, placement and text of the signs were based on considerations of visitor enjoyment, preservation of the historical features of the bridge, the need to avoid a proliferation of man-made intrusions, and protection of wildlife and the general riparian environment." *Id.* at 1434. Thus, the NPS "balanced competing policy considerations in determining how to warn the public of the hazard," prompting the court to apply the discretionary function exception. *Id.*

### 2. Cases in Which the Discretionary Function Exception Did Not Apply

In *Summers v. United States*, the plaintiff, a four-year-old girl, was injured in the Golden Gate National Recreation Area when she burned her foot on hot embers after losing her balance on a rock which was part of a fire ring. 905 F.2d 1212, 1213 (9th Cir. 1990). The plaintiff argued that the NPS failed to identify and warn barefoot park visitors of the danger of hot coals within the fire rings. *Id.* at 1213–14. In analyzing whether the discretionary function exception applied, the court stated that there was no evidence "that [the] failure to post warnings of the sort that would have prevented [the plaintiff's] injury was the result of a decision reflecting the competing considerations of

Case 5:15-cv-00703-BRO-SP   Document 155   Filed 02/01/16   Page 14 of 20   Page ID #:2020

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

the Service's sign policy." *Id.* at 1215. The court also stated that "a governmental failure to warn is not necessarily shielded from suit simply because a discretionary function is in some way involved." *Id.* "On the contrary, we have concluded that where the challenged governmental activity involves safety considerations under an established policy, rather than the balancing of competing policy considerations, the rationale for the exception falls away and the U.S. will be responsible for the negligence of its employees." *Id.* (internal quotation marks and citation omitted). The court then concluded that the exception did not apply. *Id.* at 1217.

In *Seyler v. United States*, the plaintiff was injured in a motorcycle accident on a road maintained by the Bureau of Indian Affairs (the "Bureau") and sued to recover damages for the injuries he sustained. 832 F.2d 120, 121 (9th Cir. 1987). Specifically, the plaintiff argued that the road was negligently designed, maintained, and marked by the Bureau. *Id.* The court ultimately concluded that the discretionary function exception did not apply, reasoning that there was "nothing in the record to suggest that the [Bureau's] failure to provide [speed limit] signs resulted from a decision grounded in social, economic or political policy." *Id.* at 123 (internal quotation marks and citation omitted). The court added that it doubted "any decision not to provide adequate signs would be of the nature and quality that Congress intended to shield from tort liability," and that "[t]he same may be said for at least some other kinds of maintenance decisions." *Id.* (internal quotation marks and citation omitted).

In *Bolt v. United States*, a resident of a United States Army base brought a negligence claim against the United States after she slipped and fell on snow and ice that accumulated in the common parking area of her apartment complex. 509 F.3d 1028, 1030 (9th Cir. 2007). In that case, the court ultimately decided that the Army's snow removal policy provided a mandatory requirement to remove snow during certain times of the year, a policy with which the Army did not comply. *Id.* at 1033. Thus, the court concluded there was no element of judgment or choice in deciding not to remove snow and ice from the residential parking lots. *Id.* However, the court nonetheless concluded that, even assuming the Army had some discretion in deciding when to remove snow from the apartment parking areas, the discretionary function exception would not have applied. *Id.* at 1033–1035.

Case 5:15-cv-00703-BRO-SP   Document 155   Filed 02/01/16   Page 15 of 20   Page ID #:2021

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

Namely, the court rejected the Army's two proffered policy considerations that it argued led to its failure to remove snow and ice from the parking lot: (1) limited financial resources and (2) promoting self-help and responsibility among base residents in making snow removal decisions. *Id.* at 1034. With respect to the former policy consideration, the court held that "[i]n enacting § 2680, . . . Congress did not intend to protect decision-making based on budgetary constraints." *Id.* As to the latter policy consideration, the court noted that although the Army chose to assign significant responsibility for snow and ice removal to residents, it did not include the "promotion of self-help among residents as a factor warranting the exercise of discretion in deciding when to conduct snow and ice removal from" the apartment parking lots. *Id.* Further, the court explained that "maintenance work is not the kind of regulatory activity to which the Supreme Court envisioned the discretionary function exception applying." *Id.* (internal quotation marks and citation omitted). The court also reasoned that clearing snow and ice from parking lots was a matter of routine maintenance beyond the scope of the discretionary function exception, and that the maintenance at issue involved safety considerations under an established policy rather than "the balancing of competing public policy considerations." *Id.* For these reasons, the court concluded that even assuming there was some discretion in removing snow and ice from the parking lots, the exception would not have applied.

### 3. Cases in Which the Discretionary Function Exception Applied in Part

In *ARA Leisure Services v. United States*, a tour bus went off of a road in Denali National Park and rolled over, killing five passengers and injuring twenty-five others. 831 F.2d 193, 194 (9th Cir. 1987). When the tour bus passengers and their survivors sued the tour bus company, the bus company brought an action for contribution against the United States—namely, the NPS—alleging that poor road conditions and the absence of a guardrail caused the accident. *Id.* First, the court concluded that the Park Service's decision to design and build a road without guardrails was grounded in social and public policy, because the Park Service balanced policies requiring that the roads be designed to be esthetically pleasing, lay lightly on the land, and utilize natural support. *Id.* at 195.

However, the court also concluded that the failure to maintain the road in a safe condition was not a decision grounded in social, economic, or political policies. *Id.* In so holding, the court stated that "[w]here the challenged governmental activity involves

Case 5:15-cv-00703-BRO-SP   Document 155   Filed 02/01/16   Page 16 of 20   Page ID #:2022

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees." *Id.*

In *Soldano v. United States*, two plaintiffs sued the United States under the FTCA for damages arising out of a motorcycle accident that occurred on a road in Yosemite National Park. 453 F.3d 1140, 1141 (9th Cir. 2006). The plaintiffs specifically alleged that the government negligently designed the road by omitting signs warning of the danger of vehicles stopped along the road, and negligently set the speed limit too high given the limited sight distance caused by a curve in the road. *Id.* at 1144. As to the road design and omission of a warning sign, the court held that the discretionary function exception applied. *Id.* at 1147–48. The court focused on the NPS's Sign Manual, which required the park manager to "weigh competing ends" in deciding whether and where to place signs along the road. *Id.* Namely, the Park's Sign Manual required the park manager to consider the Park's policies to minimally intrude on the natural or historic setting in the National Park, avoid "unnecessary proliferation of signs," and ensure the "safety of visitors." *Id.*

However, as to the decision to set a speed limit, the court concluded that the exception did not apply. *Id.* at 1147. The court reasoned that the NPS's decision to depart from the safety guidelines resembled "more a departure from the safety considerations established in Service policies, akin to the situations [it] confronted in *Seyler* [and] *ARA*, . . . than a mistaken judgment in a matter clearly involving choices among political, economic, and social factors." *Id.* at 1148–49. The court also stated that the element of choice did not "entail a protected, discretionary selection of the means used to meet a general policy goal, such as was the case in *Blackburn* . . . ." *Id.* at 1149.

    **4.**    **Analysis**

To begin, the Court reiterates that "the United States bears the ultimate burden of proving the applicability of the discretionary function exception." *Valdez*, 56 F.3d at 1179 (internal quotation marks omitted). Central to the Court's analysis regarding the discretionary function exception's second prong is how the Court defines the issue. As discussed above, the Bus and Truck Defendants claim the United States was negligent by failing to: (1) install longitudinal "Bus Only" markings along the left lane of the bypass

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

road, (Bus Defs.' Opp'n at 8); (2) cover temporary road signs when they were not in use, (Truck Defs.' Opp'n at 4–6); (3) post the checkpoint's operational hours, (Truck Defs.' Opp'n at 6–7); and, (4) post "open" and "closed" signs at the checkpoint, (Truck Defs.' Opp'n at 7–8). As such, according to the Bus and Truck Defendants, the issue centers on whether the United States' exercise of discretion not to engage in any of the challenged conduct is susceptible to a public policy analysis. *Miller*, 163 F.3d at 593 (citing *Gaubert*, 499 U.S. at 325).

Conversely, at oral argument, the United States urged the Court to focus more broadly on the policy considerations underlying the creation of the bypass road in deciding whether the exception applies. Specifically, the United States referenced the competing policy considerations of efficient traffic flow and general base security, which the Army addressed by creating the bypass road to, among other things, thwart potential terrorist attacks on the base. The United States claims that *Tobar* supports its position that the Court view the issue broadly. However, the United States' reliance on that case is misguided.

In *Tobar*, the issue was whether the Coast Guard's acts of boarding, inspecting, and towing a ship fell under the discretionary function exception. *See Tobar*, 731 F.3d at 947–48. First, the court held that although 14 U.S.C. § 89(a) guided the Coast Guard's conduct, the statute allowed for the exercise of discretion in deciding whether to board a vessel. *Id.* at 946. Next, the court concluded that the second prong of the discretionary function exception was met. *Id.* at 947. In so holding, the court noted that "'if a regulation allows the employee discretion, the very existence of the regulation creates a *strong presumption* that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.'" *Id.* at 947 (quoting *Gaubert*, 499 U.S. at 324). The court reasoned that the "policy considerations of enforcement of domestic drug laws . . . [included] 'minimization of intrusion on the privacy and property interests of searched parties,' general considerations of foreign relations, as well as 'weighing the costs of [boarding and searching the ship] against the likelihood of an enforcement success.'" *Id.* at 948 (quoting *Mid–South Holding Co. v. United States*, 225 F.3d 1201, 1206–07 (11th Cir. 2000)). The court also stated that "[a]lthough the attendant details could be characterized as mundane or as disengaged from any substantial policy consideration, they are nonetheless critical to the

Case 5:15-cv-00703-BRO-SP Document 155 Filed 02/01/16 Page 18 of 20 Page ID #:2024

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

performance of the discretionary scheme and, accordingly, are entitled to the protection of the discretionary function exception." *Id.* at 948 (internal quotation marks omitted).

In the instant action, the United States relies on the last statement to support its position. However, this statement does not, as the United States contends, require the Court to broadly construe the issue to include the policy considerations underlying the creation of the bypass road in deciding whether the exception applies. Rather, *Tobar* merely requires the Court to look to the underlying statute, regulation, or policy and impute the policy considerations which led to its creation to the Army in the conduct at issue. *Tobar* does not, however, require the Court to look to the broad policy considerations underlying the creation of the bypass road, rather than the more narrow challenged conduct specified above, in analyzing the discretionary function exception.

*ARA* and *Soldano* are instructive to this issue, as each case indicates that the Court must look to both the broad and narrow conduct in deciding whether the discretionary function exception applies. As discussed above, in *ARA*, the court concluded that the discretionary function exception applied to the design and creation of the road on which the accident occurred, but that it did not apply to the failure to maintain the road in a safe condition. *ARA*, 831 F.2d at 195. Similarly, in *Soldano*, the court held that the discretionary function exception applied as to the road design and omission of a warning sign. *Soldano*, 453 F.3d at 1147–48. However, the exception did not apply with respect to the decision to set a speed limit, as that the choice only involved a safety consideration. *Id.* at 1147–49.

Following this precedent, in the instant action, the Court must focus on both the creation of the bypass road and the specific acts in maintaining the safety of the road. Yet the Bus and Truck Defendants concede that the creation of the bypass road is likely protected under the discretionary function exception, thus the road's creation and design is not at issue. (*See* Bus Defs.' Opp'n at 8; Truck Defs.' Opp'n at 4–8.) Remaining is the narrow issue as to whether not marking the left lane, not covering the checkpoint sign, not indicating the checkpoint's operational hours, and not marking the checkpoint "open" or "closed" required the balancing of competing policy considerations. *Summers*, 905 F.2d at 1215.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-00703-BRO (SPx)** | Date | February 1, 2016 |
| Title | **MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL.** | | |

Accompanying each of the United States' Motions to Dismiss is a declaration of Michael Butolph, the Deputy Director of Emergency Services at Fort Irwin.  (Butolph Decl. ¶ 2.)  Mr. Butolph explains that his job is to develop a comprehensive traffic safety program for vehicle traffic within the boundaries of the base, which includes the checkpoint where the accident took place.  (Butolph Decl. ¶ 4.)  He also states that in carrying out his responsibilities, he is guided by the policies published by the Department of Defense; namely, the policy of maintaining traffic safety.  (Butolph Decl. ¶ 4, Exs. A, C.)  Based on the Court's review of Mr. Butolph's declaration, it is clear that the Fort Irwin National Training Center maintains an established, overarching policy of ensuring traffic safety in and around the training center.

As discussed above, "where the challenged governmental activity involves safety considerations under an established policy, rather than the balancing of competing policy considerations, the rationale for the exception falls away and the U.S. will be responsible for the negligence of its employees."  *Summers*, 905 F.2d at 1215 (internal quotation marks omitted).  Thus, the decisions not to provide bus lane markers, cover temporary road signs, install a sign indicating the checkpoint's operating hours, and post "open" and "closed" signs must involve more than just traffic safety considerations.

Here, the United States fails to carry its burden to show that any decision not to engage in the challenged conduct required the balancing of competing policy considerations.  Unlike *Valdez*, *Childers*, and *Blackburn*, where there were additional policy considerations to balance against visitor safety, such as preserving the beauty of the National Parks, here, the United States proffers no argument that competing considerations existed with respect to the challenged conduct.  By contrast, this case is more like *Summers*, *Seyler*, and *Bolt*, where the discretionary function exception did not apply because "the challenged governmental activity involve[d] safety considerations under an established policy, rather than the balancing of competing policy considerations."  *ARA*, 831 F.2d at 195 (holding that the failure to maintain the road in a safe condition was not a decision grounded in social, economic, or political policies); *see also Soldano*, 453 F.3d 1148–49 (holding that the NPS's decision to depart from safety guidelines resembled "more a departure from the safety considerations established in Service policies . . . than a mistaken judgment in a matter clearly involving choices among political, economic, and social factors").  In sum, the decision not to engage in the challenged conduct here is unlikely to "be of the nature and quality that Congress

Case 5:15-cv-00703-BRO-SP   Document 155   Filed 02/01/16   Page 20 of 20   Page ID #:2026

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | EDCV 15-00703-BRO (SPx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | MARGARET KEIPER ET AL. V. VICTOR VALLEY TRANSIT AUTHORITY ET AL. | | |

intended to shield from tort liability," *Seyler*, 832 F.2d 123, because the United States points to no policy considerations to weigh against traffic safety.

Accordingly, the Court concludes that the discretionary function exception does not apply to the challenged conduct. Thus, the Bus and Truck Defendants' claims against the United States are not barred by the doctrine of sovereign immunity.[3]

## V.     CONCLUSION

For the foregoing reasons, the Court **DENIES** the United States' Motions to Dismiss.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | cw |

---

[3] The Court also notes that it need not address whether the Bus and Truck Defendants sufficiently state a claim under Rule 12(b)(6), as the United States only moved to dismiss the third party complaints under Rule 12(b)(1).