UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 15-703 JGB (SPx) | Date | July 30, 2019 |
| Title | *Margaret Keiper, et al. v. Victor Valley Transit Authority, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant Amston Supply Inc.'s Motion for Summary Judgment (Dkt. No. 254); (2) GRANTING Defendant Mardan Transportation, LLC's Motion for Summary Judgment (Dkt. No. 257); and (3) VACATING the August 5, 2019 Hearing (IN CHAMBERS)

Before the Court are two motions for summary judgment. Defendants Amston Supply Inc. ("Amston") and Mardan Transportation, LLC ("Mardan") seek summary judgment as to all claims against them. ("Amston MSJ," Dkt. No. 254; "Mardan MSJ," Dkt. No. 293.) The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. Upon consideration of the papers filed in support of and in opposition to the Motions, the Court GRANTS Defendants' Motions and VACATES the August 5, 2019 hearing.

## I. RELEVANT BACKGROUND

This case arises out of a June 2, 2014 collision between a bus and tractor-trailer at Fort Irwin National Training Center. (Dkt. No. 225 at 3.) The bus is owned by Victor Valley Transit Authority ("VVTA") and operated by Dinorah Aguilar, an employee of Transdev Services, Inc. ("Transdev"), formerly known as Veolia Transportation Service, Inc. ("Veolia") (collectively, "Bus Defendants"). The tractor is owned by Mardan Transportation LLC ("Mardan"). The trailer, owned by Amston Supply, Inc. ("Amston"), was operated by Steven Kilty, who was working for FBN Transportation, Inc. ("FBN") (collectively, "Truck Defendants"). On March 4, 2015, the Keiper Plaintiffs filed this action in state court, and Bus Defendants removed the action to this Court on April 10, 2015. ("Keiper Action" 5:15-cv-0703, Dkt. No. 1.) The Chestnut Plaintiffs, including Plaintiffs Michael Chestnut, Misiona Tusieseina, and Pedro Miranda, filed their action in state court on March 24, 2015, and Bus Defendants removed the

action to this Court on April 17, 2015. ("Chestnut Action" 5:15-cv-0762, Dkt. No. 1.) Chestnut, Tusieseina, and Miranda filed an additional copy of their Complaint reflecting the basis for federal jurisdiction on August 28, 2015. (Chesnut Action, Dkt. No. 38.) The Aguilar Plaintiffs filed their action in state court on April 14, 2015, and Bus Defendants removed the action to this Court on July 23, 2015. ("Aguilar Action" 5:15-cv-1481, Dkt. No. 1.)

Bus Defendants filed crossclaims against Truck Defendants—including Amston and Mardan—in the Keiper, Aguilar, and Chestnut Actions before the cases were consolidated. (Keiper Action, Dkt. No. 25; Aguilar Action, Dkt. No. 6; Chestnut Action, Dkt. No. 39.) Each of these crossclaims asserts two claims for relief: equitable indemnity and contribution. (Keiper Action, Dkt. No. 25; Aguilar Action, Dkt. No. 6; Chestnut Action, Dkt. No. 39.)

On January 26, 2016, Ariel Derosier filed her action in state court, and Truck Defendants removed the action to this Court on April 4, 2016. ("Derosier Action" 5:16-cv-0610, Dkt. No. 1.) On April 22, 2016, the Court consolidated these actions, ordered all documents and proceedings occur under the Keiper case number, and administratively closed the Derosier docket. ("Consolidation Order," Dkt. No. 171.)

On May 19, 2016, the Court granted Truck Defendants' and the United States' motions to stay the consolidated action pending the resolution of the parallel criminal action against Kilty. ("Stay Order," Dkt. No. 191.) The Court lifted the stay on January 17, 2019. (Dkt. No. 219.) On March 7, 2019, Plaintiffs Chestnut, Tusieseina, and Derosier filed their First Amended Complaint. (Dkt. No. 245.) On March 22, 2019, Miranda filed his First Amended Complaint. (Dkt. No. 253.) Plaintiffs allege claims for negligence and motor vehicle negligence against Amston and Mardan. (See Dkt. Nos. 177, 187, 188, 245, 253.) Bus Defendants, via their crossclaims, allege equitably indemnity and contribution against Amston and Mardan. (See Chestnut Action Dkt. No. 39; Aguilar Action No. 6; Derosier Action Dkt. No. 16; Keiper Action Dkt. No. 25.)

On March 28, 2019, Amston and Mardan filed their Motions for Summary Judgment, seeking dismissal of all claims against them. (See Amston MSJ; Mardan MSJ.) In support of their Motions, Amston and Mardan submitted the following documents:

- Amston Statement of Uncontroverted Facts ("Amston SUF," Dkt. No. 255);
  - Declaration of Mark Hribar ("Hribar Decl.," Dkt. Nos. 254-5);
    - Amston-Derrico Rental Agreement ("Amston-Derrico Agreement," Dkt. No. 254-6);
    - Derrico-Kilty Lease ("Derrico-Kilty Lease," Dkt. No. 254-7);
- Mardan Statement of Uncontroverted Facts ("Mardan SUF," Dkt. No. 258);
  - Declaration of Cara Zinkowich ("Zinkowich Decl.," Dkt. No. 257-5);
    - Mardan-Kilty Lease ("Mardan-Kilty Lease," Dkt. No. 257-6);
- Declaration of Connie Benson ("Benson Decl.," Dkt. Nos. 254-1, 257-1);
  - Keiper First Amended Complaint ("Keiper FAC," Dkt. Nos. 254-2, 257-2);

- o FBN-Kilty Answer ("FBN-Kilty Answer," Dkt. Nos. 254-3, 257-3);
- o May 17, 2016 Email ("May 2016 Email," Dkt. Nos. 254-4, 257-4).

On April 8, 2019, Bus Defendants opposed both Motions. ("Amston Opp'n," Dkt. No. 265; "Mardan Opp'n," Dkt. No. 262.) In support of their oppositions, Bus Defendants submitted the following documents:

- Statement of genuine dispute of material facts and additional material facts—Amston ("Amston SDMF," Dkt. No. 266);
- Statement of genuine dispute of material facts and additional material facts—Mardan ("Mardan SDMF," Dkt. No. 263);
- Declaration of Jeremy Alberts ("Alberts Decl.," Dkt. Nos. 262-1, 265-1);
  - o Bus Defendants' Answer to Plaintiffs' Complaint ("Bus Answer," Dkt. Nos. 262-1, 265-1);
  - o DriveCam Video ("Video," Dkt. Nos. 262-1, 265-1);
  - o Tractor Photographs ("Tractor Photos," Dkt. No. 262-1);
  - o Trailer Photograph ("Trailer Photo," Dkt. No. 265-1).

On April 15, 2019, Amston and Mardan replied to Bus Defendants' oppositions. ("Amston Reply," Dkt. No. 278; "Mardan Reply," Dkt. No. 281.) In support of their replies, Amston and Mardan submitted the following documents:

- Amston Reply to SDMF ("Amston SDMF Reply," Dkt. No. 279);
- Amston Evidentiary Objections ("Amston Objections," Dkt. No. 280);
- Mardan Reply to SDMF ("Mardan SDMF Reply," Dkt. No. 282);
- Mardan Evidentiary Objections ("Mardan Objections," Dkt. No. 283).

On April 8, 2019, Plaintiffs jointly requested additional time to oppose the Motions and to continue the hearing. (See Dkt. Nos. 267, 268.) The Court granted the request to permit Plaintiffs to take depositions and/or obtain written discovery. (Dkt. No. 289.) The Court continued the hearing to Monday August 5, 2019. (Id.) On July 15, 2019, Plaintiffs filed statements of non-opposition each the Amston and Mardan Motions. (Dkt. Nos. 296, 297.)

## II. FACTS

### A. Undisputed Facts

On June 2, 2014, at approximately 5:13 a.m., a bus collided with a tractor-trailer on the Fort Irwin base. (Amston SUF ¶ 1; Mardan SUF ¶ 1.) At the time of the collision, Kilty was operating the tractor-trailer in the course and scope of his employment with FBN. (Amston SUF ¶ 2; Mardan SUF ¶ 2.) Prior to the collision, Kilty parked the tractor-trailer in a lane of traffic and turned off the exterior lights. (Amston SDMF, additional fact ¶ 3; Mardan SDMF,

additional fact ¶ 3.)[1] Aguilar, who was driving the bus, collided with Kilty's tractor-trailer, killing Dail Keiper, Sr., and injuring many others. (Amston SDMF, additional fact ¶ 4; Mardan SDMF, additional fact ¶ 4.)

Amston is in the business of renting trailers such as the one involved in the June 2014 collision. (Amston SUF ¶ 6.) It has been renting trailers and other equipment since 1979. (Id. ¶ 7.) Amston rented the trailer involved in the collision to Derrico Logistics, and Derrico Logistics leased the trailer to Kilty. (Id. SUF ¶¶ 3-4.) These agreements are Amston's only involvement in this matter. (Id. ¶¶ 5, 8.) Amston, as lessor, did not maintain any exclusive control over the trailer's use during the rental period. (Id. ¶ 10.) The trailer had lights and reflective tape. (Id. ¶ 13.)[2] The reflective tape was applied to the rear of the trailer in three disjointed parts—the top left, the bottom middle, and the top right. (See Trailer Photo.)

In 2013, Mardan owned one tractor and leased it to Kilty in exchange for monthly payments. (Mardan SUF ¶¶ 4-6.) Kilty operated the tractor exclusively. (Id. ¶ 6.) Leasing the tractor at issue was Mardan's only business. (Id. ¶ 7.) And the lease to Kilty was Mardan's only involvement in this action. (Id. ¶ 8.) Mardan, as lessor, did not maintain any exclusive control over the tractor's use during the rental period. (Id. ¶ 10.) The tractor had lights and reflective tape. (Id. ¶ 13.)[3] The reflective tape was applied at the top right and left of the tractor's rear side in 90-degree angles. (See Tractor Photos.) The tape appears to be some undeterminable distance below the top of the tractor. (Id.)[4]

///

---

[1] Amston and Mardan label this fact as "disputed" because they object to it. (See Amston Objections; Mardan Objections.) First, an objection to a fact does not place that fact in dispute. Second, the Court is perplexed why Amston and Mardan find objection to this fact necessary, as it has no bearing on the issues addressed in these Motions. The Court does not rely on this fact in its analysis in this Order. This information is provided as context.

[2] Bus Defendants dispute this assertion and direct the Court to the Trailer Photo. The Trailer Photo clearly shows that the trailer has some reflective tape. (See Trailer Photo.) Whether the reflective tape was sufficiently arranged on the trailer, however, is a legal question. The Court finds it is not disputed that the trailer had reflective tape.

[3] Bus Defendants dispute this assertion and direct the Court to the Video. Although the Court cannot see reflective tape in the still from the Video, Bus Defendants' Tractor Photos show there was reflective tape on the tractor. (See Tractor Photos.) Whether the reflective tape was adequately applied on the tractor or was improperly obscured by an exhaust pipe, however, are legal questions. The Court finds it is not disputed that the tractor had reflective tape.

[4] Both Amston and Mardan offer as "fact" that they are not motor carriers under 49 C.F.R. § 390. (Amston SUF ¶ 9; Mardan SUF ¶ 9.) Bus Defendants "dispute" this "fact" by asserting Amston and Mardan are motor carries under 49 C.F.R. § 390.5. (Amston SDMF ¶ 9; Mardan SDMF ¶ 9.) These are legal conclusions for the Court to determine, not "facts" it must accept as disputed or undisputed.

B. **Evidentiary Objections**

Amston objects to the Video and the Trailer Photo. (Amston Objections.) Mardan objects to the Video and the Tractor Photos. (Mardan Objections.)

1. **The Video**

Amston and Mardan each assert the Video is inadmissible because it lacks foundation. They argue the following: (1) there is no foundation for the date or time of the recording; (2) there is no way to authenticate the system on which it was recorded, (3) the video does not verify that Kilty parked in an active lane of travel; (4) there is no foundation that the video depicts conditions as they existed at the time of the accident. (Amston Objections; Mardan Objections.)

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. Proc. 56(e). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001). "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."). The Ninth Circuit has held that considering unauthenticated evidence at the summary judgment stage is harmless error when a competent witness could have authenticated the document. Hal Roach Studios, Inc. v. Feiner & Co., 986 F.2d 1542, 1552 (9th Cir. 1990). Thus, a document is not per se inadmissible for such shortcomings in its submission. Id. at 1551. Here, although Bus Defendants could have—and should have—provided more information concerning the date and time of the recording, the Court may still consider the Video in this Motion. Thus, arguments (1), (2), and (4) fail. As to argument (3), the Court does not use the Video to support the proposition that Kilty parked in an active lane of travel other than for purposes of background. That fact is not relevant to the Court's analysis of the Motions.

2. **Trailer Photo and Tractor Photos**

Amston and Mardan assert the Trailer Photo and Tractor Photos lack foundation and call for expert opinion. As to foundation, they argue Bus Defendants fail to provide the date, time, and location of the photos or the identity of the individual who took the photos. (Amston Objections; Mardan Objections.) They further assert that because the photos were taken after the accident, they cannot be used to demonstrate the appearance of the trailer at the time of the accident or at the time the tractor and trailer were leased to FBN and Kilty. (Amston Objections; Mardan Objections.) For the same reasons addressed concerning the Video, the Court rejects the foundation argument.

As to the argument that the photos call for expert opinion, Amston and Mardan argue the photos are used to support an assertion that the location of the reflective tape constitutes a violation of law. (Amston Objections; Mardan Objections.) The Court is unpersuaded by this argument. At the summary judgment stage, Bus Defendants do not need to prove the tape's location is not compliant with motor carrier regulations. It only needs to provide evidence that there is a dispute of fact. The Court, reviewing the Tractor Photos and Trailer Photos, observes that the reflective tape appears some distance below the top of the tractor and appears to be missing some portions to span the width of the trailer. These observations reflect a dispute of fact as to whether the placement of the reflective tape complies with applicable federal regulations. At trial, Bus Defendants may require the assistance of an expert. However, Amston and Mardan provide no authority that such expert assistance is required here.

Accordingly, the Court OVERRULES the Amston Objections and the Mardan Objections.

### III.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Id. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  DISCUSSION

Under California law, a vehicle owner may be vicariously liable for injury to a person and property resulting from the negligence of someone who uses the vehicle with the owner's permission.  Cal. Veh. Code § 17150.  However, federal law provides that an owner of a motor vehicle who rents or leases the vehicle to another

> shall not be liable under the law of any State . . ., by reason of being the owner of the vehicle . . ., for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if (1) the owner . . . is engaged in the trade or business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner[.]

49 U.S.C. § 30106(a).  Accordingly, Amston and Mardan face liability only if (1) they are engaged in the trade or business or renting motor vehicles and (2) they were independently negligent.  See id.

Amston and Mardan leased their respective trailer and tractor to Kilty.  (Amston SUF ¶¶ 3-4; Mardan SUF ¶¶ 4-6.)  These agreements were Amston and Mardan's sole involvement in the June 2014 collision.  (Amston SUF ¶¶ 5, 8; Mardan SUF ¶¶ 7-8.)  Amston and Mardan did not retain any exclusive control over their leased trailer and tractor during Kilty's rental periods.  (Amston SUF ¶ 10; Mardan SUF ¶ 10.)  Amston is in the business of renting trailers such as the one involved in the June 2014 collision.  (Amston SUF ¶ 6.)  Mardan's "only business was to lease the subject tractor."  (Mardan SUF ¶ 7.)  Thus, the only remaining issue is whether Amston and Mardan were independently negligent.  (See Amston Opp'n at 3; Mardan Opp'n at 3.)  Amston and Mardan assert there is no evidence of independent negligence.  (Amston MSJ at 5-6; Mardan MSJ at 5.)  Bus Defendants respond that each Amston and Mardan are independently negligent because they are motor carriers under 49 C.F.R. § 390.5 and did not arrange reflective tape on the trailer and tractor as required by the Federal Motor Carrier Safety Regulations.[5]  (See Amston Opp'n at 4-5; Mardan Opp'n at 4-5.)  These are Bus Defendants' only arguments concerning Amston and Mardan's independent negligence.[6]

As a threshold matter, the Court considers whether Amston and Mardan qualify as "motor carriers" such that they are required to ensure compliance with the Federal Motor Carrier Safety Regulations concerning reflective tape.  The parties dispute whether Amston and Mardan are motor carriers.  (See Amston SDMF ¶ 9; Mardan SDMF ¶ 9.)  The Court finds Bus

---

[5] The Federal Motor Carrier Safety Regulations direct that all trailers and tractors must satisfy the reflector requirements set fort in Part S8.2 of the Federal Motor Vehicle Safety Standards No. 108.  See 49 C.F.R. § 393.11(a)(1).

[6] The Court notes Plaintiffs do not oppose the Motions.  (See Dkt. Nos. 296, 297.)  Accordingly, the Court GRANTS the Amston MSJ and Mardan MSJ as to Plaintiffs' claims against them.

Defendants fail to provide any evidence that Amston and Mardan are motor carriers. Consequently, the regulations on which Bus Defendants rely are inapplicable to them as lessors.

Motor carrier means "a for-hire motor carrier or a private motor carrier. The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." 49 C.F.R. § 390.5. A "for-hire motor carrier" means "a person engaged in the transportation of goods or passengers for compensation." Id. And a "private motor carrier" means "a person who provides transportation of property or passengers, by commercial motor vehicle, and is not a for-hire motor carrier." Id. Here, Bus Defendants provide no evidence that Amston or Mardan engage in any transportation of property or passengers. Providing some form of transportation is essential to the for-hire and private motor carrier definitions. As already addressed, it is undisputed that Amston and Mardan are in the business of leasing transportation equipment and that such leases were the sole extent of their involvement in the June 2014 collision. (Amston SUF ¶¶ 5-6, 8; Mardan SUF ¶¶ 7-8.) Thus, Bus Defendants fail to provide any factual support for the proposition that Amston and Mardan provide transportation of goods or persons such that they may qualify as for-hire or private motor carriers. Additionally, Bus Defendants provide no evidence that Amston and Mardan qualify as Kilty or FBN's "agents, officers and representative" or as their "employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." See 49 C.F.R. § 390.5. Accordingly, Amston and Mardan do not qualify as "motor carriers" based on the evidence before the Court. The Federal Motor Carrier Safety Regulations are inapplicable here. As Bus Defendants' sole argument relies on the premise that the Federal Motor Carrier Safety Regulations create Amston's and Mardan's duty, their Motions fail.

## V.  CONCLUSION

For the reasons above, the Court GRANTS the Amston MSJ and the Mardan MSJ. The Court DISMISSES Plaintiffs' claims and Bus Defendants' crossclaims against Amston and Mardan. The August 5, 2019 hearing is VACATED.

**IT IS SO ORDERED.**